518 A.2d 802

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Bradley R. BAKER, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1986.
Decided Dec. 15, 1986.

24

James B. Yelovich, Dist. Atty., David Flower, Asst. Dist. Atty., Somerset, for appellant.

L. Edward Glass, Johnstown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

Appellee, Bradley R. Baker, was convicted of two counts of violating the Controlled Substance, Drug, Device and Cosmetic Act;[1] possession with intent to deliver a controlled substance;[2] and possession of a controlled substance.[3] Prior to trial Baker filed a motion to suppress. This motion was denied and during his trial the contraband,

1. Act of April 14, 1972, P.L. 233, No. 64 § 1 *et seq.*
2. 35 P.S. § 780–113(a)(30).
3. 35 P.S. § 780–113(a)(16).

which was seized by police while executing a search warrant, was introduced in evidence against him.

On appeal the Superior Court held that the affidavit in support of the application for the subject search warrant lacked sufficient specificity as to time and therefore failed of probable cause. 331 Pa.Super. 519, 479 A.2d 1093. We now reverse.

The issue before the Court is whether the application for the search warrant set forth sufficient information upon which to make a determination of the existence of probable cause.

 The standard for evaluating whether probable cause exists for the issuance of a search warrant is the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This Court specifically incorporated this test into the law of the Commonwealth in the case of *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985), wherein we stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed." *Jones v. United States,* [362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)].

*Id.,* 509 Pa. at 484, 503 A.2d at 925 (quoting *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).[4] A corollary of the "totality of the circumstances" test is that the affidavit should be interpreted in a common sense and realistic fashion. *Id.; See also*

4. *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985), is not limited to prospective application. *Id.,* 509 Pa. at 486, 503 A.2d at 926–27.

*United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965).

The language upon which the finding of probable cause was made read as follows:

> Between the 5th and 12th of March 1981, the actor did have in his possession a controlled substance containing T.H.C. Said actor did deliver to the informant on seperate [sic] occassions [sic] a controlled substance that was analyzed and did contain T.H.C. The informant did observe on seperate [sic] occassions [sic] the actor, together with others using a substance containing T.H.C. Said informant did observe the actor cutting a controlled substance containing T.H.C. A surveillance was conducted by the Conemaugh Township Police and Pennsylvania Bureau of Drug Control. The deliveries were made to the informant while the informant was under the control of the surveillance officers. The surveillance was conducted during the time the informant was inside the residence of the above listed actor. The actor related further information to the informant, and other persons present that he was expecting a large quantity of a substance containing T.H.C. on or about the 11th or 12th of March 1981. The informant has had many previous drug transactions with the actor prior to March 1981. The informant known to the police, as being a drug user over the past several years. [sic] The informant by self admission has been involved in the illegal use of drugs.

The trial court found this statement to be adequate under the now defunct *Aguilar*[5]*-Spinelli*[6] test.

In reversing, the Superior Court[7] held that the warrant was critically deficient in "its lack of reference to operative dates upon which the issuing authority or the suppression court could determine whether the information was stale." Slip op. No. 00726 Pittsburgh, 1982, p. 4. We disagree.

---

**5.** *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

**6.** *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

**7.** Rowley, J. dissenting.

28

■ An issuing authority presented with the sworn testimony of an affiant may, absent obvious chronological inconsistencies, rely that the affiant is speaking of the present or the immediate past. "Staleness" when raised must not be determined by rigorous exactitude, but rather by the experience of reasonable men, cognizant that events in the real world, and more specifically criminal events, have a life of their own, in which hours and days are measured not by clocks and calendars, but rather by who will be watching, and when will the coast be clear.

Many police informants, particularly in drug related offenses, themselves often victims, are hard-pressed to know night from morning, and live a permanent dateless time. In such cases the issuing authority should try as close as possible to establish dates. However, where not possible, magistrates should use the experience of reasonable men under the circumstances to prevent offenders, loaded with poisonous contraband, from walking free because the evidence was "stale." The "freshness" of the transactions of those who are required to avoid inquiring eyes should have a longer shelf-life than unforbidden fruit. Common sense can determine what is a reasonable age under the circumstances.

In this case the Superior Court focused on the failure of the affiant to more fully describe by date the numerous "separate occasions" set forth in the statement of probable cause. That focus was too narrow.

■ Before a search warrant can be validly issued, a magistrate "must be furnished with information sufficient to persuade a reasonable man that probable cause to conduct a search does exist." *Commonwealth v. Jackson,* 461 Pa. 632, 638, 337 A.2d 582, 584 (1975) *cert. denied,* 423 U.S. 999, 96 S.Ct. 432, 46 L.Ed.2d 376 (1975). Probable cause exists when the magistrate is presented with evidence which would cause a reasonable man to believe that a crime is being, or is about to be committed. *Commonwealth v. Murray,* 437 Pa. 326, 263 A.2d 886 (1970).

The warrant in this case was issued *on* March 12, 1981. The first sentence of the affiant's probable cause statement explicitly recites defendant's criminal conduct, to wit: "[B]etween the 5th and 12th of March, 1981, the actor did have in his possession a controlled substance containing T.H.C." [8] Later it is alleged that "[T]he actor related further information to the informant ... that he was expecting a larger quantity of a substance containing T.H.C. on or about the 11th or 12th of March, 1981."

Thus the magistrate was presented with a clear indication that a crime was being, or had recently been, committed, i.e. the possession of a controlled substance. In addition, he was also presented with reliable information that the commission of another crime was about to be, or had been, committed, i.e. the delivery of a larger quantity of a substance containing T.H.C.

The remaining allegations in the warrant were susceptible of two interpretations. Either the "separate occasions" that the informant had contact with the defendant occurred at some time prior to March 5th, or they occurred during the time period bounded by March 5th and March 12th. If the latter interpretation is accepted, then certainly this information is fresh enough to survive the staleness charge. However, even if the former interpretation is accepted we do not think a different result is dictated, since the reference to the numerous occasions on which the informant had contact with the defendant were indicative of a course of dealing between the informant and the actor which supplied the "veracity" and "basis of knowledge" for his information about the crime at hand. *See Gray, supra,* 509 Pa. at 484, 503 A.2d at 925.

8. T.H.C. is the abbreviation for Tetrahydrocannabinols, an active ingredient in hashish and marihuana. It is designated a controlled substance in the Act of April 14, 1972, P.L. 233, No. 64 § 4. [35 P.S. § 780–104(1)(iii)16].

When this application for a warrant is viewed in its totality [9] we think, as did Judge Rowley in the court below, that the warrant was properly issued.

The order of the Superior Court is reversed, and the case is remanded to that court for resolution of appellee's remaining issues.

NIX, C.J., files a concurring opinion.

ZAPPALA, J., files a dissenting opinion.

NIX, Chief Justice, concurring.

The trial court found that the warrant satisfies the more exacting standards for probable cause as set forth in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968); and their progeny. I agree with that assessment. Thus, I concur in the result reached by the majority, which sustained the trial court's ruling without attempting to dilute that which has been proven a salutary standard for the protection of the fundamental rights of every citizen of this Commonwealth. *See Commonwealth v. Gray*, 509 Pa. 476, 488, 503 A.2d 921, 928 (1986) (Nix, C.J., dissenting, joined by Zappala, J.).

ZAPPALA, Justice, dissenting.

Even under the more relaxed standard for evaluating the existence of probable cause under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) as adopted by this Court in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985), I cannot condone the majority's total departure from objective evaluation and in its stead embrace a wholly subjective ethereal world where "criminal events ... have a life of their own, in which hours and days are measured not by clocks and calendars, but rather by who will be watching, and when will the coast be clear." Majority Opinion at 28. While I concede that the "totality of the circumstances" test does introduce an element of subjectivi-

9. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985).

ty into the evaluation, that subjectivity is viewed against specific, *objective* facts, which are subject to examination and analysis, not "guesstimation".

If in fact "[m]any police informants, particularly in drug related offenses, themselves often victims, are hard pressed to know night from morning, and live a permanent dateless time", Maj.Opinion at 28, then I certainly must question the ability of those same disoriented informants to reliably name a specific actor rather than a range of actors. I certainly cannot comprehend that the quantum leap suggested by the majority today was ever intended under the relaxed standard of *Commonwealth v. Gray.* That test at its very minimum contemplates viewing objective facts in the light of experience or circumstances, however there must first be objective facts from which to apply that subjective element. Here we have no specific, objective facts, merely conjecture from which the majority now asks the magistrate to exact enough certainty to rise to the level of probable cause. This I cannot accept. Therefore, I must dissent.