**COMMONWEALTH of Pennsylvania**

v.

**Michael GLASS, Appellant.**

Superior Court of Pennsylvania.

Argued March 3, 1998.
Filed Sept. 15, 1998.

William Costopoulos, Lemoyne, for appellant.

Daniel W. Stern, Assistant District Attorney, Harrisburg, for Commonwealth, Appellee.

Before CAVANAUGH, POPOVICH, and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

This case presents an issue of first impression in the Commonwealth: whether Article I, Section 8 of the Pennsylvania Constitution proscribes the issuance of anticipatory search warrants. If it does, as appellant argues, then all of the evidence seized when the police searched appellant's residence should have been suppressed. Because we find that anticipatory search warrants do not violate the Pennsylvania Constitution, we affirm.

Before setting forth the factual and procedural history, we note our standard when reviewing the denial of a motion to suppress. We must determine whether the record supports the trial court's factual findings. *Commonwealth v. Donahue*, 428 Pa.Super. 259, 276–78, 630 A.2d 1238, 1247 (1993), *appeal denied*, 538 Pa. 612, 645 A.2d 1316 (1994). In making this determination, this court will consider only the evidence presented by the Commonwealth's witnesses and so much of the evidence presented by the defense witnesses which, as fairly read in the context of the record as a whole, remains

uncontradicted.[1]  *Id.*  If the record supports the suppression court's factual findings, inferences, and legal conclusions, they will not be disturbed on appeal.  *Commonwealth v. Brinkley*, 423 Pa.Super. 289, 290–92, 620 A.2d 1226, 1227 (1993), *appeal denied*, 535 Pa. 630, 631 A.2d 1003 (1993).

The relevant facts are as follows.  On May 2, 1996, Trooper Brian J. Merritt of the Pennsylvania State Police Tactical Narcotics Team III, Harrisburg, served a search warrant for illegal substances on an individual in Dauphin County.  Trooper Merritt found a large quantity of controlled substances, as well as various receipts, paraphernalia and records regarding this individual's drug trafficking activity.  (Notes of testimony, suppression hearing, 12/18/96 at 6.)  The individual, Richard David Osborne, chose to cooperate with Trooper Merritt in order to receive more lenient treatment at sentencing.  (Notes of testimony, jury trial, 12/18/96 at 78.)  Part of this cooperation included Osborne's explaining the meaning of his drug trafficking records, which included the name "Mike G." next to the number "6125."  According to Osborne, this entry indicated that Michael Glass, appellant herein, owed Osborne $6,125 for four pounds of marijuana Glass had purchased.  (Notes of testimony, suppression hearing, 12/18/96 at 7.)

On May 7, 1996, Trooper Merritt, along with Troopers Jay Lownsbery and Craig Snyder, returned to Osborne's residence.  While there, Osborne received a telephone call.  After hanging up, he advised the troopers that it was appellant who called and that he was prepared to pay Osborne.  (*Id.*)  The troopers then searched Osborne and his vehicle, and followed him to appellant's residence, which the troopers kept under a constant "rolling" surveillance during Osborne's visit.  (*Id.* at 11–12.)  Osborne went inside, returning to a predetermined location after approximately one hour with $6,000 in cash.  (*Id.* at 7–8.)  Osborne told the troopers that appellant wished to purchase an additional five to ten pounds of marijuana on Thursday, May 9th.  Osborne also said that he had been supplying appellant with marijuana for approximately four months, always delivering it to appellant's residence.  (*Id.* at 8.)

Trooper Merritt, who in the meantime had learned that other members of the strike force had received information indicating appellant's involvement in drug trafficking, conducted a preliminary criminal history check.  This check indicated appellant had been arrested previously for possession with intent to deliver a controlled substance.  (*Id.* at 9.)

Based on all the information in his possession, Trooper Merritt obtained between 12 and 14 pounds of marijuana, which he re-packaged into one-pound packages, in order to conduct a reverse sting operation.  (*Id.*)  He also obtained an anticipatory search warrant, defined as " 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.' "  *Commonwealth v. Reviera*, 387 Pa.Super. 196, 200–02, 563 A.2d 1252, 1254 (1989), *appeal dismissed*, 526 Pa. 41, 584 A.2d 308 (1991), quoting 1 W.R. LaFave, **Search and Seizure** § 3.7(c) at 94 (2d ed.1987).

After searching Osborne and his vehicle, Trooper Merritt gave the re-packaged marijuana to Osborne.  Trooper Merritt also provided Osborne with an alert pager, a device that looks like any other pager but sends out a radio signal when a button is pushed.  Trooper Merritt instructed Osborne to push the button as soon as he delivered the drugs.  (Notes of testimony, suppression hearing, 12/18/96 at 9–10.)  Osborne then drove to appellant's residence with the troopers following.  Within approximately five minutes, the alert pager went off.  A few minutes later, after again searching Osborne and his vehicle at a pre-determined meeting place, the troopers executed the anticipatory search warrant.  (*Id.* at 10.)  When they arrived at appellant's residence, they found him in the kitchen re-packaging the recently delivered marijuana.  (Notes of testimony, jury trial, 12/18/96 at 38.)  Among the items the troop-

---

1. In this case, the Commonwealth's witness, Trooper Brian J. Merritt, presented the only evidence.

ers seized were one Harley–Davidson motorcycle; two trucks; $13,840 in cash, most of which was secreted behind a heat register; approximately 70 firearms; more than two dozen individual knives, plus 60 knives in a canvas wrap; the twelve pounds of marijuana used in the "sting"; and a small amount of marijuana found on appellant's person. (R. at 14 and Exhibit A; notes of testimony, forfeiture hearing, 6/25/97 at 68–69.) [2]

Prior to trial, defense counsel filed a motion to suppress based upon the alleged unconstitutionality of the anticipatory search warrant. At the suppression hearing, Trooper Merritt testified that he did not believe he had sufficient probable cause to obtain a search warrant without the controlled delivery of drugs. (Notes of testimony, suppression hearing, 12/18/96 at 13.) The suppression court found "that at the time of obtaining the search warrant, there was not adequate probable cause to enter [appellant's] dwelling or to conduct a search of any area in which he had a legally protected privacy interest." (*Id.* at 16.) Nevertheless, the suppression court denied the motion to suppress. Following a jury trial, appellant was convicted of possession and possession with intent to deliver a controlled substance, and possession of drug paraphernalia.[3] He was subsequently sentenced to three to ten years' incarceration.

■ Appellant presents two issues, the first of which raises a challenge to the constitutionality of anticipatory search warrants under Article 1, § 8 of the Pennsylvania Constitution. Before addressing that issue, we note our agreement with the Commonwealth that appellant's more specific challenges to the search warrant are waived. In particular, appellant's claim that even if anticipatory search warrants do not per se violate the Pennsylvania Constitution, the warrant in his case is unconstitutional because the affidavit of probable cause was defective; and appellant's claim that the affidavit at issue in this case does not comply with the Pennsylvania Rules of Criminal Procedure, are waived because they were not presented

to the suppression court. *See Commonwealth v. Rosenfelt*, 443 Pa.Super. 616, 630, 662 A.2d 1131, 1137–38 (1995) (to preserve an issue for review, a party must make a timely and specific objection at trial; an appellate court will not consider a claim not brought to the trial court's attention at the time when any error committed could have been corrected), *appeal denied,* 544 Pa. 605, 674 A.2d 1070 (1996); *Commonwealth v. Menginie*, 312 Pa.Super. 293, 299–301, 458 A.2d 966, 969 (1983) (finding waiver of a claim that a search warrant was invalid because it contained misstatements of fact supporting probable cause, where Menginie failed to apprise the suppression court of the specific factual errors contained in the warrant). Our careful review of appellant's motion to suppress, as well as the entire transcript from the suppression court hearing, reveals nothing but a baldly stated challenge to the constitutionality of anticipatory search warrants under Article I, § 8 of the Pennsylvania Constitution. (R. at 18; notes of testimony, suppression hearing, 12/18/96.) Furthermore, the Commonwealth indicated this omission in its memorandum of law in opposition to the motion to suppress. (R. at Additional 1.) We turn, then, to the constitutional claim.

As appellant correctly notes, Pennsylvania courts have frequently found that the Pennsylvania Constitution affords its citizens a more heightened protection of their privacy interests than does the federal Constitution. As a result, while appellant concedes that Pennsylvania courts have found anticipatory search warrants constitutionally valid under the federal Constitution, he argues that they are invalid under Pennsylvania's Constitution. (Appellant's brief at 17–19, discussing *Commonwealth v. DiGiovanni*, 428 Pa.Super. 81, 630 A.2d 42 (1993), and *Commonwealth v. Reviera, supra.*)

When an appellant raises a claim implicating a provision of the Pennsylvania Constitution, our supreme court has held that he should brief and analyze: 1) the text of the

---

**2.** The decision on the forfeiture issue is awaiting this court's disposition of the appeal. (Notes of testimony, forfeiture hearing, 6/25/97 at 6–7.)

**3.** 35 P.S. §§ 780–113(a)(16), (a)(30), & (a)(32), respectively.

Pennsylvania constitutional provision; 2) the history of the provision, including Pennsylvania case law; 3) related case law from other states; and 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence. *Rosenfelt, supra* at 628–30, 662 A.2d at 1137, citing *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). *But see Commonwealth v. White*, 543 Pa. 45, 49–51, 669 A.2d 896, 899 (1995) (reaffirming the importance of the analysis articulated by the supreme court in *Edmunds, supra,* vis-a-vis state constitutional claims, but addressing such a claim where appellant simply raised the claim under the Pennsylvania Constitution, cited cases in support of his claim, and related the cases to the claim), *disapproved on other grounds, Pennsylvania v. Labron*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). We note with approval that appellant in our case has complied with the requirements of *Edmunds*.

### 1. Text:

The constitutional provision at issue, Article I, § 8, provides:

§ 8. **Security from searches and seizures**

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Const. Art. I, § 8.

### 2. History:

■ Although almost identical in language with the Fourth Amendment to the United States Constitution, the Pennsylvania provision pre-dates the federal Constitution by more than a decade and pre-dates the Fourth Amendment by fifteen years. *Edmunds, supra* at 391–93, 586 A.2d at 896, citing *Commonwealth v. Sell*, 504 Pa. 46, 63, 470 A.2d 457, 466 (1983). The *Edmunds* court has already thoroughly analyzed the history of Article I, § 8 and the development of Pennsylvania's exclusionary rule. *See Edmunds, supra* at 384–97, 586 A.2d at 892–899. For our purposes, the significance of this history is that unlike the federal exclusionary rule, which has been interpreted as intended only to deter police misconduct, Pennsylvania's exclusionary rule serves to "bolster the twin aims of Article I, Section 8; to wit, the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Id.* at 397–98, 586 A.2d at 899. As our supreme court explained in *Commonwealth v. Miller*, 513 Pa. 118, 518 A.2d 1187 (1986):

'The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause. It is designed to protect us from unwarranted and even vindictive incursions upon our privacy. It insulates from dictatorial and tyrannical rule by the state, and preserves the concept of democracy that assures the freedom of its citizens. This concept is second to none in its importance in delineating the dignity of the individual living in a free society.'

*Edmunds, supra* at 397–98, 586 A.2d at 899, quoting *Miller, supra* at 127, 518 A.2d at 1191–1192 (other citations omitted). It is thus clear that we are required to examine the validity of anticipatory search warrants in Pennsylvania under Pennsylvania, rather than federal, jurisprudence. We must therefore determine whether anticipatory search warrants violate Article I, § 8's twin aims: safeguarding the right to privacy, and ensuring that no warrant shall issue absent probable cause. *Edmunds, supra* at 397–98, 586 A.2d at 899.

Appellant cites numerous cases in which our supreme court held that the Pennsylvania Constitution provides greater protection to its citizens than does the federal constitution. Among those cases cited by appellant are *White, supra* (refusing to follow federal law by allowing a warrantless search of a vehicle absent exigent circumstances when the owner of the vehicle has been arrested and is outside the vehicle and in police custody); *Commonwealth v. Mason*, 535 Pa. 560, 637 A.2d 251 (1993) (substantially limiting the scope of the 'independent source' and 'inevitable discovery' doctrines); *Commonwealth v. Rodriquez*, 532 Pa. 62, 614 A.2d 1378 (1992)

(refusing to adopt the "justifiable detention" exception to the requirement that the police have probable cause or reasonable suspicion before seizing a private citizen); *Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308 (1992) (declaring unconstitutional that portion of the implied consent law permitting blood samples to be drawn from persons in serious motor vehicle accidents without reason to believe they were under the influence of alcohol or drugs); *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539 (1991) (refusing to remove the requirement that police "knock and announce" before entering a dwelling); and *Edmunds, supra* (refusing to adopt the "good faith" exception to the exclusionary rule). According to appellant, these cases indicate that anticipatory search warrants should be found unconstitutional under Article I, § 8. (Appellant's brief at 26.)

While we agree with appellant that all of these cases indicate a clear intention on the part of our supreme court to guard jealously Pennsylvania citizens' privacy interests under Article I, § 8, we find all of these cases distinguishable from our case on the most critical point: anticipatory search warrants actually provide more privacy protection than searches conducted in their absence. As the *Reviera* court noted, "In approving the use of anticipatory warrants, we recognize that 'the entire thrust of the exclusionary rule and the cases that have applied it is to encourage the use of search warrants by law enforcement officials.' " *Reviera, supra* at 204–06, 563 A.2d at 1256, quoting *Alvidres v. Superior Court of Ventura County*, 12 Cal.App.3d 575, 581, 90 Cal.Rptr. 682, 685 (1970). The *Reviera* court continued, "A search pursuant to a warrant is preferred over a warrantless search because in the former case it is a neutral magistrate who makes the critical determination of whether probable cause exists." *Reviera, supra* at 204–06, 563 A.2d at 1256.

Having reviewed the Pennsylvania case law cited by appellant in support of his argu-ment, we turn next to case law from other states appellant has cited in support of his claim.

**3. Related Case Law From Other States**

Appellant concedes that both the federal courts and most state courts have determined that anticipatory search warrants are not per se invalid under the Fourth Amendment.[4] We agree. *See, e.g., DiGiovanni, supra*, and *Reviera, supra*. According to appellant, however, a number of states have disapproved anticipatory warrants under their state constitutions, statutes, and/or procedural rules. (Appellant's brief at 27.) Our review of the cases cited by appellant belies this assertion as it relates to state constitutions, the only issue properly before this court. *See* discussion *supra*. *See also Ex Parte Oswalt*, 686 So.2d 368 (Ala.1996) (anticipatory warrants violate a criminal procedural rule); *People v. Poirez*, 904 P.2d 880 (Colo.1995) (affirming trial court's order of suppression on statutory grounds); *People v. Ross*, 168 Ill.2d 347, 213 Ill.Dec. 672, 659 N.E.2d 1319 (1995) (anticipatory warrants violate a provision of the Code of Criminal Procedure); *State v. Padavich*, 536 N.W.2d 743 (Iowa 1995) (anticipatory search warrants violate a state statute); *State v. Canelo*, 139 N.H. 376, 653 A.2d 1097 (1995) (anticipatory search warrants do not categorically violate the state constitution; however, the particular warrant at issue is unconstitutional). Appellant admits as much in his brief: "Of the foreign jurisdictions banning the anticipatory search warrant, most cite the specific language of the statute or rule governing the issuance of a warrant, rather than undertaking an independent analysis of their respective state constitutions." (Appellant's brief at 30.) The only exception cited by appellant is Florida, which apparently found that anticipatory warrants violated its state constitution until that constitution was amended to require adherence to U.S. supreme court decisions in the area of search and seizure. (Appellant's brief at 30 n. 3,

---

**4.** Appellant's brief actually reads, "the federal courts (though not the U.S. Supreme Court) have determined that anticipatory search warrants are not per se *valid* under the Fourth Amendment." (Appellant's brief at 26 (emphasis added).) We presume this is a typographical error based upon the sentence following this statement: "Most states, usually under a federal analysis alone, have likewise affirmed the constitutionality of such warrants." (*Id.*)

citing *Bernie v. State*, 524 So.2d 988 (Fla. 1988).)

In contrast, several states have found that anticipatory search warrants are not per se invalid under their state constitutions. *State v. Mier*, 147 N.J.Super. 17, 23, 370 A.2d 515, 518 (1977); *People v. Glen*, 30 N.Y.2d 252, 258, 331 N.Y.S.2d 656, 659, 282 N.E.2d 614, 617 (1972), *cert. denied sub nom. Baker v. New York*, 409 U.S. 849, 93 S.Ct. 58, 34 L.Ed.2d 91 (1972); and *Alvidres, supra*. As the New Jersey superior court opined:

> There is no particular constitutional infirmity in the mere fact that a warrant is sought to search for contraband which has not as yet reached the destination described therein. The test of constitutional validity is simply whether the search is reasonable under such circumstances in view of the probable cause that a crime is being committed, as demonstrated by the proofs underlying the issuance of the warrant.

*Mier, supra* at 20–21, 370 A.2d at 517.

Appellant argues additionally, however, that many of those states that have found anticipatory warrants not per se violative of their state constitutions have found the anticipatory warrant at issue unconstitutional because "the affidavit contained insufficient facts to warrant a determination that the drug event was 'ascertainable and preordained' and on a 'sure and irreversible course' to happening." (Appellant's brief at 27, citing *Canelo, supra*.) As already noted, appellant did not preserve this issue for our review.

### 4. Policy considerations

The major policy behind the use of search warrants is to protect citizens from unreasonable searches and seizures. Article I § 8. Such searches may be unreasonable because they constitute fishing expeditions by overly zealous police officers or by officers motivated by personal or political animus. *See Edmunds, supra* at 393–95, 586 A.2d at 897 (discussing the general warrants used by the British to conduct sweeping searches based on generalized suspicion); *Miller, supra* at 125–29, 518 A.2d at 1191–1192. We have already observed that warranted searches, in which a neutral magistrate determines the legality of the search, are preferred over warrantless searches, in which the police make such a determination in the heat of the moment. *Reviera, supra* at 204–06, 563 A.2d at 1256. As the Second Circuit Court of Appeals observed, "Courts—though not yet the Supreme Court, to be sure—have upheld the anticipatory warrant, in large part, because they see it as desirable, whenever possible, for police to obtain judicial approval before searching private premises." *United States v. Garcia*, 882 F.2d 699, 703 (1989), *cert. denied sub nom. Grant v. United States*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989).

A second policy consideration is, of course, protection of the right of privacy. The makers of our constitution " 'conferred, as against the government, the right to be let alone – the most comprehensive of rights and the right most valued by civilized [people].' " *Edmunds, supra* at 395–97, 586 A.2d at 898, quoting *Denoncourt v. Commonwealth of Pennsylvania State Ethics Commission*, 504 Pa. 191, 199, 470 A.2d 945, 948–949 (1983), quoting *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).

Thus, as the *Garcia* court opined:

> The question thus posed by this case— and by any challenge to a warrant that is issued in anticipation of delivery of an item upon which the government relies to establish probable cause to search—is whether the objective of the fourth amendment is better served by allowing an agent to obtain a warrant in advance of the delivery, or whether it is better served by forcing him to go to the scene without a warrant, and, if necessary, proceed under the constraints of the 'exigent circumstances' exception, subject always to the risk of 'being second-guessed' by judicial authorities at a later date as to whether the known facts legally justified the search. W. LaFave, Search and Seizure 700–01 (1978).

*Garcia*, 882 F.2d at 703. We believe the same can be said of an analysis under Article

I § 8.[5] Thus, in terms of protecting the privacy interests of Pennsylvania citizens, the issue is whether a search pursuant to an anticipatory warrant, or a search with no warrant, provides more protection.

A review of a few recent cases in which the police based their search upon exigent circumstances supports the *Garcia* court's concerns. Of particular note is *Commonwealth v. Ariondo*, 397 Pa.Super. 364, 580 A.2d 341 (1990), *appeal denied*, 527 Pa. 628, 592 A.2d 1296 (1991). In *Ariondo*, police officers learned from a confidential informant that Ariondo had been receiving shipments of cocaine via the United Parcel Service ("UPS"). As a result, the officers requested that UPS notify them of any packages addressed to Ariondo. A canine sniff search of one such package signaled that drugs were present, so the officers obtained a search warrant and opened the package, which contained five ounces of cocaine. The officers then arranged for some of the cocaine to continue by UPS to Ariondo's residence, where four officers set up surveillance, and two of the officers began preparing an affidavit for a search warrant. After the package had been delivered, the officers waited a few minutes, and then knocked at the door, announced who they were, and informed the occupants that they were securing the residence because they believed narcotics were present. Finding Ariondo in a bedroom with the contents of the package, the officers informed him they were in the process of obtaining a search warrant, and asked for consent to search the house. Ariondo refused, so the officers awaited the arrival of the warrant, after which they seized the evidence. *Id.* at 367–71, 580 A.2d at 343–344.

Following a denial of his motion to suppress, Ariondo was found guilty of possession and possession with intent to deliver. On appeal, we found that the police officers had created the exigency that resulted in the warrantless search, and that the entry was therefore illegal. Nevertheless, Judge Wieand, writing for the majority, affirmed because the evidence was seized only after the officers obtained a valid warrant issued independently of observations made by the police during their illegal entry. *Id.* at 373–79, 580 A.2d at 346–349. Judge Cavanaugh concurred in the result, while Judge Kelly concurred, agreeing with the majority that the fruits of the illegal search were admissible, but also noting that the problem of false exigency could have been avoided by the simple expedient of applying for an anticipatory search warrant, citing *Reviera*, *supra*. *Id.* at 385–86, 580 A.2d at 352. *See also Commonwealth v. Fitzpatrick*, 446 Pa.Super. 87, 90–92, 666 A.2d 323, 325 (1995) (noting with approval that police officers obtained an anticipatory search warrant that expressly conditioned execution on the officers' receiving a signal from a device implanted in a package of marijuana about to be delivered to Fitzpatrick); *Commonwealth v. Peterson*, 408 Pa.Super. 22, n. 7, 596 A.2d 172, 183 n. 7 (1991) (Popovich, J., dissenting) (disagreeing with the majority's conclusion that exigent circumstances justified a search of a gate house without a warrant, citing *Reviera*, and noting that the problem of false exigency could have been avoided by obtaining an anticipatory search warrant), *affirmed*, 535 Pa. 492, 636 A.2d 615 (1993).

As the California court of appeals observed, "The speed with which law enforcement is often required to act, especially when dealing with the furtive and transitory activities of persons who traffic in narcotics, demands that the courts make every effort to assist law enforcement in complying with the

---

5. We agree with the *Garcia* court that the rationale of *United States ex rel. Campbell v. Rundle*, 327 F.2d 153 (3d Cir.1964), cited by appellant in a footnote, is unsound when applied to anticipatory search warrants, as defined *supra*. *Garcia*, 882 F.2d at 702. In *Campbell*, the police officer in his complaint stated only that from information received which he believed to be true, there was just cause to suspect that articles and instruments used to procure abortions would be located in a certain building under Campbell's control. *Campbell*, 327 F.2d at 155. Thus, as the *Campbell* court noted, "it was not charged in the complaint ... that any crime had been committed, was being committed, or was about to be committed, in Pennsylvania or elsewhere." *Id.* at 161. In contrast, an anticipatory warrant may only be issued when specific, necessary events are anticipated "which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void." *Garcia*, 882 F.2d at 702. Thus, anticipatory warrants do not permit the "fishing expedition" that occurred in *Campbell*.

edicts that the courts themselves have issued." *Alvidres, supra* at 581, 90 Cal.Rptr. at 686. *Accord, Reviera, supra* at 208–10, 563 A.2d at 1258 (Tamilia, J., concurring).

Nevertheless, appellant argues that Pennsylvania jurisprudence requires probable cause to exist at the time the warrant issues, not at some future time. (Appellant's brief at 32.) In support of his argument, appellant relies upon several Pennsylvania cases, as well as upon Chapter 2000 of the Pennsylvania Rules of Criminal Procedure. (Appellant's brief at 32–37.)

We agree with appellant that probable cause must exist at the time the warrant issues. For probable cause to exist at the time the warrant issues, however, the issuing authority must have probable cause to believe only that seizable property will be found on the searched premises at the time the warrant is executed. As the *Garcia* court observed when discussing the nature of anticipatory search warrants:

> This is not to say, however, that such warrants are not based on probable cause. To the contrary, when a government official presents independent evidence indicating that delivery of contraband will, or is likely to, occur, and when the magistrate conditions the warrant on that delivery, there is sufficient probable cause to uphold the warrant.

*Garcia,* 882 F.2d at 702 (citations omitted). The following comments of the New York court of appeals, contrasting anticipatory warrants based upon future delivery of seizable property with warrants based upon present possession of seizable property, explain the rationale for a finding of probable cause in anticipation of delivery:

> [E]ven when there is present possession of the seizable property the officer has a minimal discretion not to execute the warrant if it should appear to him ... that the possession is no longer the fact at the time of expected execution. At best, present

possession is only probative of the likelihood of future possession. In cases like these the certainty of future possession is greater or is often greater than that based on information of past and presumably current possession.

*Glen, supra* at 258–259, 331 N.Y.S.2d 656, 282 N.E.2d at 617. These comments emphasize the concept that probable cause is just that: it is probative. Whether the seizable property is already at the place to be searched or on its way there, the issuing authority may issue the warrant if it is probable, but not necessarily certain, that seizable property will be found on the searched premises when the warrant is executed.[6]

The *Reviera* court addressed the same argument appellant raises, and agreed that a search warrant is not a " 'general arm for ferreting out crime, but a special proceeding, based upon present cause ...' " *Reviera, supra* at 202–04, 563 A.2d at 1255, quoting *Commonwealth v. Shaw,* 444 Pa. 110, 114, 281 A.2d 897, 899 (1971) (other citations omitted). The *Reviera* court then set forth our supreme court's definition of probable cause from *Commonwealth v. Baker,* 513 Pa. 23, 518 A.2d 802(1986): " 'Probable cause exists when the magistrate is presented with evidence which would cause a reasonable man to believe that a crime is being, *or is about to be committed.*' " *Reviera, supra* at 202–04, 563 A.2d at 1255, quoting *Baker,* supra at 28–30, 518 A.2d at 805 (emphasis in *Reviera* ). The *Reviera* court then continued:

> We take this to mean that a warrant must be based on information concerning past or present criminal activity. This does not mean, however, that the police are obliged to wait until a criminal scheme is brought to fruition before requesting a warrant. Where magistrates are presented with reliable evidence that contraband will arrive at a specific location within a short period of time, they may conclude that a crime is in the process of being committed, and

---

**6.** Appellant argues that a phrase in Pa.R.Crim.P. 2006(f), "these items or property are located" at the place described, requires that seizable property already be located on the property to be searched at the time the warrant issues. As already noted, appellant's claim that anticipatory

search warrants violate the Rules of Criminal Procedure is waived because it was not presented to the suppression court. To the extent that appellant is arguing that the supreme court based the cited phrase of the Rule on a Pennsylvania constitutional mandate, we disagree.

may issue the warrant despite the fact that the contraband has not yet arrived at its ultimate destination. We caution that a warrant cannot properly be issued based upon mere speculation that a crime might occur at some future time.

*Reviera, supra* at 202–04, 563 A.2d at 1255 (citations omitted). *Accord DiGiovanni, supra* at 89–90, 630 A.2d at 46. This same rationale applies within the context of the Pennsylvania Constitution.

■■■ Obviously, however, the use of anticipatory warrants must be circumscribed. As the *Garcia* court noted, "any warrant conditioned on what may occur in the future presents some potential for abuse." *Garcia*, 882 F.2d at 703. As a result of this concern, the *Reviera* court opined:

Implicit in the question of whether an anticipatory warrant is valid is the issue of whether the warrant allows for a sufficient degree of judicial control over the circumstances under which a search will be conducted. We emphasize that the issuing authority should retain control as to when an anticipatory search warrant is to be executed. Before permitting the issuance of a search warrant, the issuing authority must be assured that the warrant will not be executed prematurely, i.e., before contraband or evidence of crime arrives at the location to be searched. Thus, where appropriate, the issuing authority should make the execution of the warrant contingent on the occurrence of specific events or the passage of a specific period of time. On the other hand, there is no need to specify contingencies in warrants where the facts before the issuing authority indicate that premature execution of the warrant is unlikely.

*Reviera, supra* at 204–06, 563 A.2d at 1256 (citations omitted). We agree, and therefore hold that to meet constitutional muster under

Article I, § 8, the issuing authority must be satisfied that the anticipatory warrant will not be executed prematurely.

Having found no merit to appellant's first issue, we turn to his second issue. This issue has several sub-issues, all relating to appellant's sentence. First, appellant alleges that the sentencing court erred when it imposed a mandatory minimum sentence of 3 to 10 years' incarceration as provided by 18 Pa. C.S.A. § 7508(a)(1)(ii) [7] because the Commonwealth failed to give formal notice that it was invoking the mandatory minimum sentencing provisions, as required by 18 Pa. C.S.A. § 7508(b).[8] Next, appellant argues that the sentencing court erred when it vacated the sentence after the Commonwealth filed a motion to vacate in which it admitted that it had not given appellant formal notice of its intention to seek the mandatory minimum sentence. Appellant also argues that the court erred when it then allowed the Commonwealth to give proper notice of its intention to invoke § 7508. Finally, appellant alleges that the sentencing court erred when it either re-sentenced appellant to the mandatory minimum sentence, or invoked its discretionary powers and sentenced appellant outside the sentencing guidelines, and without providing any reason on the record for doing so.[9] A brief recital of the sentencing procedure follows.

At appellant's first sentencing hearing on February 13, 1997, the court sentenced appellant to 3 to 10 years' incarceration without specifying that it was applying the mandatory minimum sentence. We note, however, that the sentence guideline form indicates, "Mandatory three (3) years $15,000 fine." (R. at 24.) Additionally, the transcript of the re-sentencing hearing reveals that the court believed it had imposed the mandatory minimum sentence on February 13. (Notes of testimony, re-sentencing hearing, 3/19/97 at

7. This provision requires that when a person is convicted of violating §§ 13(a)(14), (30), or (37) of the Controlled Substance, Drug, Device and Cosmetic Act, and the amount of marijuana involved in at least ten pounds but less than 50 pounds, the mandatory minimum sentence is three years in prison and at least a $15,000 fine. 18 Pa.C.S.A. § 7508(a)(1)(ii).

8. This section provides, *inter alia,* that "reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing." 18 Pa. C.S.A. § 7508(b).

9. Appellant complied with the requirements of Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987).

2, 5.) The court also assumed that proper notice had been given. (*Id.* at 5–6.) Defense counsel did not object to the propriety of the sentence at the hearing.

The Commonwealth concedes that it did not give appellant *formal* notice of its intention to invoke § 7508(a)(1)(ii); however, the Commonwealth indicates that it had off-the-record conversations with defense counsel regarding the statutory minimum, and that the pre-sentence investigation report, which defense counsel accepted, noted the mandatory minimum sentence.[10] (Commonwealth's brief at 13; notes of testimony, sentencing hearing, 2/13/97 at 3.) Thus, the Commonwealth did *not* concede that it had not given appellant *reasonable* notice, which is all that is required under § 7508(b). (Notes of testimony, re-sentencing hearing, 3/19/97 at 4.)

After sentencing, appellant filed a motion for modification of sentence in which he raised the notice issue and argued that the court erred by imposing the mandatory minimum sentence without notice by the Commonwealth; and that the sentence was otherwise excessive because it was outside the guidelines, there were no aggravating factors, and the court did not place its reasons for sentencing outside the guidelines on the record. (R. at 26.) This motion was denied February 25, 1997. On February 28, 1997, the Commonwealth filed a motion to vacate sentence, requesting that the court vacate the sentence so that the Commonwealth might provide formal notice of intent to seek the mandatory minimum, and advising appellant of its intent. (R. at 28.) On March 4, 1997, the court entered an order which reads, "Order denying modification/vacation of sentence is *reversed* and sentence is *vacated* this date. Both Parties may advance all bases for the court to consider in re-sentencing which is set for a time within 20 days of this order...." (R. at 29.)

A second sentencing hearing was held on March 19, 1997. Defense counsel acknowledged that it was clear from his own re-

search that the Commonwealth could request sentencing under § 7508(a)(1)(ii); however, he claimed the Commonwealth failed to give formal notice of its intention to do so. (Notes of testimony, re-sentencing hearing, 3/19/97 at 5.) The court then re-sentenced appellant to 3 to 10 years' incarceration, basing the sentence on both the mandatory sentencing provision of § 7508, and the court's discretionary powers to sentence outside the sentencing guidelines. (*Id.* at 7–8.) According to the sentencing court, its reasons for sentencing outside the guidelines would appear "in the space provided on the sheet." [11] (*Id.* at 7.)

As already noted, appellant claims numerous sentencing errors. The Commonwealth suggests that if we find error on the part of the sentencing court, we should remand for re-sentencing. Our review indicates, however, that the sentencing court did not err when it re-imposed the mandatory minimum sentence at the second hearing. Additionally, we fail to see how appellant has been prejudiced. Our reasons follow.

▄▄▄ The court retained jurisdiction when it vacated appellant's February 13, 1997 sentence on March 4, 1997. 42 Pa.C.S.A. § 5505 ("[A] court upon notice to the parties may modify or rescind any order within 30 days after its entry ... if no appeal from such order has been taken or allowed."). Even if the Commonwealth had not filed its motion to vacate, therefore, the court had the inherent power to vacate the sentence *sua sponte* in order to correct its own error. *Cf. Commonwealth v. Baker*, 352 Pa.Super. 260, 266–67, 507 A.2d 872, 876 (1986) (court on its own motion may modify or rescind a final order within 30 days of its entry, but may modify or rescind an interlocutory order beyond the 30–day period permitted under § 5505). We note additionally that the court did not grant the Commonwealth's motion; rather, it reversed its order denying appellant's motion to modify/vacate. (R. at 29.)

---

10. That report is not a part of the record certified to this court.

11. We assume the court was referring to the guideline sentence form; however, only one such

form, which contains no explanation for sentencing outside the guidelines, appears in the record. This form also relates to the first sentencing. (R. at 24.)

The Commonwealth's motion to vacate sentence provided notice to appellant of its intention to seek the mandatory minimum sentence provided by § 7508. Because the court vacated the prior sentence, the Commonwealth provided this notice after conviction but before sentencing, as required by § 7508(b). *See Commonwealth v. Colding*, 482 Pa. 112, 118–20, 393 A.2d 404, 408 (1978) (the effect of an order vacating a sentence is to render the vacated sentence void and a nullity). *See also Commonwealth ex rel. Champion v. Claudy*, 171 Pa.Super. 143, 145, 90 A.2d 638, 639 (1952) (the effect of an order vacating a sentence is to restore the relator to the status of an unsentenced defendant convicted of a crime). The court then allowed both parties an opportunity to advance any argument the court should consider when re-sentencing, as required by 42 Pa. C.S.A. § 5505. (R. at 29.) At the re-sentencing hearing, appellant did not argue that the Commonwealth had failed to meet its burden of proving that he possessed between ten and 50 pounds of marijuana with intent to deliver. As a result, the court re-imposed the mandatory minimum sentence.

We agree with appellant that the Commonwealth has the sole discretion to invoke the mandatory minimum sentence. *Commonwealth v. Daniels*, 440 Pa.Super. 615, 621–23, 656 A.2d 539, 542 (1995); *Commonwealth v. Biddle*, 411 Pa.Super. 210, 218–20, 601 A.2d 313, 318 (1991). Nevertheless, "[b]y its own terms, the statute does not oblige the Commonwealth to provide a defendant with any particular form of notice. 'It only requires that notice which is "reasonable" under the circumstances of a specific case shall be afforded "after conviction and before sentencing."'" *Daniels, supra* at 621–23, 656 A.2d at 542. The *Daniels* court found that notice was reasonable when given during plea negotiations rather than after conviction and before sentencing. *Id.* Similarly, our supreme court found harmless error when the Commonwealth gave a defendant notice of its intention to seek the mandatory minimum sentence prior to trial rather than after conviction, because defense counsel clearly was not surprised at sentencing. *Commonwealth v. Bell*, 537 Pa. 558, 570–72, 645 A.2d 211, 218 (1994), *cert. denied sub nom. Bell v. Pennsylvania*, 513 U.S. 1153, 115 S.Ct. 1106, 130 L.Ed.2d 1072 (1995). Additionally, the Third Circuit Court of Appeals, affirming the dismissal of a petition for writ of habeas corpus, held that double jeopardy does not prohibit an enhanced sentence pursuant to § 7508 in a state re-sentencing proceeding after the initial sentence is reversed on appeal. *United States ex rel. Wilmer v. Johnson*, 30 F.3d 451, 458 (3d Cir.(Pa.) 1994). The *Wilmer* court premised its holding in part on the provision in § 7508 that allows the Commonwealth to appeal if a sentencing court refuses to apply the mandatory minimum sentence. 18 Pa.C.S.A. § 7508(d). In such a case, the appellate court "shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section." *Id.*

Based upon all of the foregoing, we perceive no prejudicial error in the proceedings before the sentencing court. The Commonwealth invoked the mandatory minimum provision after conviction and before sentencing, and the court provided appellant with an opportunity to respond.

Having found no merit to either of appellant's issues, we affirm.

POPOVICH, J., files a Concurring Statement.

POPOVICH, Judge, concurring:

I concur in the majority's determination that anticipatory search warrants do not violate the Constitution of Pennsylvania. *See Commonwealth v. Peterson*, 408 Pa.Super. 22, 43, 596 A.2d 172, 183 n. 7 (Pa.Super.1991) (Popovich, J., dissenting) (the problems of false exigency in search of a "gate house" where drugs were sold could have been eliminated by obtaining an anticipatory search warrant, citing *Commonwealth v. Reviera*, 387 Pa.Super. 196, 563 A.2d 1252, 1254 (Pa.Super.1989), *appeal dismissed*, 526 Pa. 41, 584 A.2d 308 (1991)), *affirmed*, 535 Pa. 492, 636 A.2d 615 (1993). I also concur in the majority's resolution of appellant's sentencing claims.

However, I write separately to note my concern with the police's involvement in, or

more properly, the inducement of appellant's possession of marijuana with the intent to distribute by acting as the supplier of the drugs. I recognize that the issue of entrapment and the distinct issue of the violation of a defendant's due process rights based upon the police's "outrageous" involvement in the charged criminal activity have not been raised presently, and, even if raised, certainly would not have been successful, since appellant actually asked the informant to provide him with five to ten pounds of marijuana. *See e.g. Commonwealth v. Mance,* 539 Pa. 282, 652 A.2d 299 (1995) (where police supplied informant with marijuana to sell to defendant, no entrapment or violation of due process, since defendant voluntarily entered into drug transaction and police tactic of supplying informant with marijuana was not outrageous conduct).

Nevertheless, in the present case, the police's conduct did actually result in a crime of possession of marijuana with intent to distribute which carried a *greater* mandatory minimum sentence than that which appellant intended to commit. Appellant asked the informant to provide him with five to ten pounds of marijuana. If appellant was convicted of possessing more than two, but less than ten pounds of marijuana, a mandatory minimum sentence of one year and a mandatory minimum fine of $ 5,000.00, would have been applicable. 18 Pa.C.S.A. § 7508(a)(1)(i).[1] Despite appellant's specific request, the police chose to deliver nearly twelve pounds of marijuana to appellant, thus, resulting in a mandatory minimum sentence of three years in prison and a $15,000.00 fine. 18 Pa.C.S.A. § 7508(a)(1)(ii). In effect, the police created the factual conditions necessary to increase the mandatory minimum sentence in this case. This is an action of which I do not approve. However, since appellant has not raised this as a sentencing issue, it is waived, and I concur in the decision of the majority.

---

1. If appellant has been convicted of another drug trafficking offense, then the mandatory minimum sentence increases to two years and a fine of $ 10,000.00. 18 Pa.C.S.A. § 7508(a)(1)(i). Since the presentence report has not been made a part of the official record, it is unclear whether appellant has a previous conviction for drug trafficking.