630 A.2d 42

**COMMONWEALTH of Pennsylvania**

**v.**

**Paul DiGIOVANNI, Appellant.**

Superior Court of Pennsylvania.

Argued June 22, 1993.

Filed Aug. 19, 1993.

William T. Cannon, Philadelphia, for appellant.

Peter Gardner, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, HUDOCK and CERCONE, JJ.

CAVANAUGH, Judge:

Appellant Paul DiGiovanni was found guilty in a non-jury trial of possession to deliver a controlled substance and criminal conspiracy, and was sentenced to an aggregate term of

imprisonment of three to six years. On appeal, he presents the following single issue for our review: whether the trial court, acting as the pretrial suppression court, erred when it denied his motion to suppress the physical evidence. More specifically, he argues that the police attained a warrant in the case *sub judice* in anticipation of future events, which in most situations he claims *Commonwealth v. Reviera,* 387 Pa.Super. 196, 563 A.2d 1252 (1989), *appeal dismissed* 526 Pa. 41, 584 A.2d 308 (1991), teaches is improper. We affirm, as we disagree with appellant's reading of *Reviera* and we adhere to federal precedents that have declared probable cause exists in identical scenarios.

The facts concerning the appellant's arrest were aptly summarized by the trial court:

On March 1, 1990, Philadelphia Police received information from Detective Cook of the Tucson, Arizona Police Department that they had uncovered a package containing approximately fifteen (15) pounds of marijuana. Detective Cook stated that the package was opened by an employee of Pak Mail of America, a package delivery company. It was their policy to open packages they come in contact with to check for hazardous material. The employee also checked the return address on the package and found it to be a non-existent location. Upon opening the box, the employee discovered the marijuana and immediately contacted the Tucson Arizona Police Department. Detective Cook responded and conducted a field test on the contents of the package which proved positive for marijuana. Further investigation by the Tucson Police disclosed that the person who sent the package, Jay Anderson, had sent several other packages in the past four months to the same address in Philadelphia. The name of the intended recipient in Philadelphia was "Rose Mary King", an apparently fictitious person.

Due to the intended destination of the package, Detective Cook contacted Philadelphia Police. After speaking with Sergeant Mander of the Philadelphia Police it was agreed that Detective Cook would place an identifying label on the

package and ship it to the United Parcel Service (hereinafter "UPS") office in Philadelphia.

On March 2, 1990, at approximately 9:30 a.m., Sergeant Mander came into contact with the package at the UPS Loss Prevention Office at 4th Street and Oregon Avenue. After viewing the identifying label on the package, Sergeant Mander and Lieutenant Gallo opened the package. Upon observing the contents of the package and a badge number inside the box, the police resealed the box and removed the identifying label, leaving the original recipient label intact. The officers then secured a UPS truck and uniform. Sergeant Mander also notified Officer King to prepare and secure a Search and Seizure Warrant based on all the information he had obtained.

At approximately 11:45 a.m., Sergeant Mander met with Officer King, who had obtained the search warrant for the recipient address, the home of one Jacqueline DeMarco. These officers, along with several others met at a location in close proximity to where the package was to be delivered. Officer Spangler then put on the UPS uniform and entered the UPS delivery truck along with Sergeant Mander and Officer King to deliver the package.

Officer Spangler arrived at the location at approximately 12:10 p.m. The disguised officer knocked on the door and told the male that answered, that he had a delivery for "Rose Mary King." The male stated that she was not at home and he would take the box. He then asked the undercover officer why he was using the small van and not the big one like earlier times. Spangler replied that they use the small vans for special deliveries and with that the male signed the delivery receipt, "David Wilson", and took possession of the package. Officer Spangler then left and he gave a description of David Wilson to Officer King.

At approximately 12:15 p.m., Officer King, Officer Cudjik and several other police officers arrived at the premises to execute the search warrant. Officer Cudjik immediately crept to the front window as the other officers surrounded the house. Upon looking through the window he observed

two white males who he later identified at trial as Paul DiGiovanni and David Wilson and a white female sitting around a coffee table containing the open package. He also perceived a conversation between the defendant and the female whereupon the defendant stood up and placed some of the contents of the package into a piece of tinfoil. The defendant then reached into his pocket and counted out some money which he placed on the coffee table. Moments later the police knocked on the front door and announced their presence. Shortly thereafter the door was forcefully opened and the police secured the premises. On the coffee table they confiscated two small tinfoil packages containing a ground weed and, on the floor next to the table, the open package containing a large amount of ground weed. All of this weed was later analyzed and identified as marijuana. The defendant, Paul DiGiovanni, co-defendant, David Wilson, and a female identified as Jacqueline DeMarco were arrested and charged with the aforementioned offenses.

The appellant filed a pretrial motion to suppress the physical evidence seized from Ms. DeMarco's residence, alleging, *inter alia*, that the requirements for the use of an anticipatory search warrant were not met. On January 3, 1992, a suppression hearing was held before the Honorable D. Webster Keogh. On January 17, 1992, the suppression court held another hearing, the purpose of this was to hear argument on a case which both sides claimed as binding, *Commonwealth v. Reviera, supra.* The suppression court found the Commonwealth's presentation more persuasive and ruled that the appellant's Motion to Suppress was denied. The trial was started later in the day. The Commonwealth's case was put on that day, and the defendants' case was presented on May 13, 1992. On July 1, 1992, the trial court found the appellant guilty of possession with intent to deliver and criminal conspiracy. On October 26, 1992, the defendant was sentenced to a mandatory term of three (3) to (6) years and was fined $15,000 pursuant to 18 Pa.C.S.A. § 7508. The appellant was also sentenced to a concurrent term of eleven and one-half (11½) to

twenty-three (23) months on the criminal conspiracy conviction. This appeal followed.

■ Appellant argues presently that the suppression court erred by failing to find that the affidavit of probable cause was insufficient to justify an anticipatory search of Ms. DeMarco's residence. He acknowledges that the police, under certain circumstances, may use anticipatory warrants. *See United States v. Wylie*, 919 F.2d 969 (2nd Cir.1990); *United States v. Garcia*, 882 F.2d 699 (2nd Cir.1989); *Commonwealth v. Reviera, supra.* However, he asserts that *Reviera* indicates that anticipatory warrants can only be used under a particular circumstance. Specifically, appellant interprets *Reviera* to declare that an anticipatory warrant can only be issued where there is evidence of ongoing criminal activity. Here, he asserts that the police had no knowledge or concrete suspicion that the person(s) receiving the package containing marijuana were engaged in criminal activity. Appellant, moreover, interprets *Reviera* as indicating that there is a preference for verifying that criminal activity exists before the warrant's issuance. He characterizes that the procedure used by the police here amounts to nothing more than a fishing expedition, and that the police could have devised a better procedure than the one *sub judice* to safeguard against the violation of Constitutional rights.[1]

1. The Commonwealth presently asserts that we need not address appellant's argument. It claims that the appellant failed to display he had a legitimate expectation of privacy in Ms. DeMarco's home at the suppression hearing.

We reject this line of argument out of hand. Our Commonwealth's Constitution, unlike its Federal counterpart, provides a non-resident with "automatic standing" to raise a Constitutional violation to a person in appellant's position. *See Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983). The Record does not indicate that the appellant's alleged lack of standing to assert a violation of his Constitutional rights was ever raised below, nor would we expect it to have been raised given the well-settled nature of Pennsylvania's "automatic standing" rule. Both sides appear to have conceded at the suppression hearing that the appellant had a legitimate expectation of privacy in Ms. DeMarco's residence to challenge the warrant's validity. Moreover, the suppression court made no mention of this issue in its opinion. We accordingly feel that the Commonwealth's present argument is misguided, challenging something that was self-evident to the parties below. Certainly,

 As indicated by the seminal case in this area, *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), probable cause is a fluid concept which turns on the assessment of probabilities in a particular factual context. *Gates, supra,* at 232, 103 S.Ct. at 2329, 76 L.Ed.2d at 544. "While an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645 (1969) as quoted in *Gates, supra,* 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546 (citations omitted). Our Supreme Court, moreover, has declared that deference should be accorded the initial determination of probable cause made by the issuing magistrate:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of a de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." "A grudging or negative attitude by reviewing courts towards warrants" ... is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner."

*Gates, supra,* at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547 (citations omitted); *accord Commonwealth v. Woods,* 404 Pa.Super. 432, 436, 590 A.2d 1311, 1313 (1991); *Commonwealth v. Yerger,* 333 Pa.Super. 501, 511–2, 482 A.2d 984, 989 (1984). Accordingly, the traditional standard of review of a magistrate's probable cause determination is whether a substantial basis existed for concluding that a search would uncover evidence of wrongdoing. *Gates, supra,* at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. "The task of the issuing magistrate is simply to make a practical, common-sense deci-

a person on the premises at the time of the search and seizure has standing under the Pennsylvania Constitution. *Commonwealth v. Treftz,* 465 Pa. 614, 617, 351 A.2d 265, 268 (1976).

sion whether, given all the circumstances set forth in the affidavit before him, including the "veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband will be found in a particular place." *Commonwealth v. Miller,* 334 Pa.Super. 374, 382, 483 A.2d 498, 501–2 (1984), *quoting Gates, supra,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *accord Commonwealth v. Carlisle,* 348 Pa.Super. 96, 100, 501 A.2d 664, 666 (1985).

The most relevant case in our Commonwealth, as both parties recognize, is *Reviera, supra,* a case of first impression for the appellate courts of this Commonwealth and to date the only one of our cases to have addressed the issue of anticipatory warrants.[2] In *Reviera,* an undercover police officer was told by a confidential informant that controlled substances were being sold out of 3031 North Lawrence Street. The undercover officer tried to purchase an ounce of cocaine at the residence, but was told that by the resident that cocaine would not be available until another shipment arrived at 10:00 p.m. The officer was invited to return at that time to purchase cocaine. The officer proceeded to attain a warrant, issued at 9:50 p.m., to conduct a nighttime search for contraband at the house. As a result of the search, the appellant was arrested and charged with violations of the Controlled Substance, Drug, Device, and Cosmetic Act, 35 Pa.S.A. §§ 780–101 *et seq.* The suppression court subsequently granted the defendant's motion to suppress because at the moment the warrant was issued, the package of controlled substances had not yet arrived at 3031 North Lawrence Street. Thus, the tenor of that court's decision was that anticipatory warrants were *per se* invalid.

On appeal to this Court, we reversed. Without discussion, we followed the lead of the great majority of federal and states cases and approved the efficacy of anticipatory war-

---

**2.** The Court in *Reviera* found efficacious Professor LaFave's definition of "anticipatory warrant:" "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *LaFave, supra,* § 3.7(c) at 94, *quoted in Reviera, supra,* 387 Pa.Super. at 201, 563 A.2d at 1254.

rants. *Reviera, supra,* 387 Pa.Super. at 202, 563 A.2d at 1254 (citations in footnote omitted). We cautioned, however, that the use of anticipatory warrants should be tempered by a sufficient degree of judicial control over the circumstances under which the warrant would be executed. *Id.* at 204, 563 A.2d at 1256. We expressed concern that such a warrant might be prematurely executed, i.e., before the arrival of the contraband or evidence of a crime. *Id.* at 205, 563 A.2d at 1256. We concluded, however, that the facts presented did not implicate such a concern, as the warrant was issued at 9:50 p.m. and the affidavit indicated that that the suspect said the drugs would arrive at 10:00 p.m.[3] *Id.* at 206, 563 A.2d at 1257.

■ We believe that the concern we had for premature execution of an anticipatory search warrant simply does not exist *sub judice.* Presently, the warrant was executed after a controlled delivery of the packaged evidence by the police. When a delivery of evidence is controlled by the government, as in the case *sub judice,* there is a greater probability than otherwise that the evidence, in fact, will be on the premises when the warrant is executed. *Cf. Rivera v. United States,* 928 F.2d 592, 602 (2nd Cir.1991). Thus, a controlled delivery makes premature delivery the most tangential of concerns.

The appellant does not question, nor could he, that anticipatory warrants have been found by *Reviera* as not *per se* violative of our Constitution's requirement that a warrant be issued with probable cause. Rather, the appellant attempts to piece together portions of the court's decision to stand for the proposition that *Reviera* requires that the police must suspect particular defendants of ongoing criminal activity before issuing a warrant.

It is true, as the appellant suggests, that the court declared: "a warrant must be based on information concerning past or present criminal activity." Appellant's Brief at 11, *quoting*

3. We note that the *Reviera* court, in reaching this conclusion, cited to a case similar to the present one where the police obtained from the post office the approximate time the package of contraband would be delivered. *See, Reviera, supra,* 387 Pa.Super. at 202, 563 A.2d at 1257, citing *Skaff, supra.*

*Reviera, supra,* 387 Pa.Super. at 203, 563 A.2d at 1255. Moreover, the court stressed the fact that a search warrant must be issued only "on the basis that criminal activity is in progress and that after the warrant is issued the crime will be completed within the near future." Appellant's Brief at 10, *quoting Reviera, supra,* at 202, 563 A.2d at 1255. However, the appellant pointedly fails to refer us to the court's pronouncement:

> [w]here magistrates are presented with reliable evidence that contraband will arrive at a specific location within a short period of time, they may conclude that a crime is in the process of being committed, and may issue the warrant despite the fact that the contraband has not arrived at its ultimate destination.

*Reviera, supra,* at 203, 563 A.2d at 1255. Nor does the appellant refer us to the court's proclaimed holding:

> [w]e hold that a magistrate has authority to issue a search warrant where she reasonably concludes that there is a fair probability that evidence of current or past criminal activity will be on the premises to be searched at the time the warrant is executed.

*Id.* at 203–4, 563 A.2d at 1255. We believe that the language the appellant relies on does not do justice to the totality of our pronouncements. We note that the chief concern we expressed is that anticipatory warrants might be prematurely executed, a concern that simply has no applicability here. We, accordingly, find appellant's argument meritless.

We do not rely on the import of *Reviera,* alone. Persuasive federal precedent has found that "[w]hen evidence ... is on a sure course to its destination, as in the mail, the prior issuance of a warrant is permissible." *United States v. Hale,* 784 F.2d 1465, 1468 (9th Cir.1986); *accord United States v. Wylie,* 919 F.2d 969, 974 (5th Cir.1990); *United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir.1988), *cert. denied* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989); *United States v. Goodwin,* 854 F.2d 33, 36 (4th Cir.1988); *United States v. Goff,* 681 F.2d 1238, 1240 (9th Cir.1982); *United States v. Lowe,* 575 F.2d 1193, (6th Cir.), *cert. denied* 439 U.S. 869, 99 S.Ct. 198, 58

L.Ed.2d 180 (1978); *United States v. Outland,* 476 F.2d 581, 583 (6th Cir.1973); *United States ex. rel. Beal v. Skaff,* 418 F.2d 430, 432 (7th Cir.1969). Presently, the fact that a package containing contraband was mailed to an identified location gave the magistrate reasonable basis to conclude that there was a fair probability that evidence of crime or contraband would arrive on the premises.[4] *Reviera* and the above federal cases illustrate that it is not necessary for the police to link a person to whose address contraband has been mailed to criminal activity before a magistrate can determine probable cause exists to issue an anticipatory warrant.[5]

We find that the magistrate had a substantial basis for concluding that evidence of wrongdoing would be on the premises, and affirm the suppression court's decision to deny appellant's motion to suppress. The Philadelphia police did nothing more than make a controlled delivery of contraband that was already headed for an identified residence addressed to a particular person. The police did not manufacture these circumstances, but rightly investigated when this situation was made known to them by the Tucson, Arizona Police Department.

For the foregoing reasons, we affirm the court below.

Judgment of sentence affirmed.

---

**4.** Professor LaFave has noted that, as a general matter, anticipatory warrants in many respects are more reliable than the typical warrant:

> it may fairly be said that as a general proposition the facts put forward to justify issuance of an anticipatory warrant are more likely to establish that probable cause will exist at the time of the search than the typical warrant based solely upon the known prior location of the items to be seized at the place to be searched.

1 W. LaFave, Search and Seizure, § 3.7(c) at 97 (2d ed. 1987). This reasoning is particularly applicable to mailed contraband on a sure course to its delivery.

**5.** We note that the concept of probable cause differs from whether proof beyond reasonable doubt exists to find the person(s) to whom the package is addressed committed a crime, a far different question.