COMMONWEALTH of Pennsylvania, Appellee,

v.

Gary COLEMAN, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 30, 1999.
Filed Dec. 23, 1999.

---

Vincent C. Murovich, Jr., Pittsburgh, for appellant.

Robert A. Willig, Asst. Dist. Atty., Pittsburgh, for Com.

Before JOHNSON, MUSMANNO and HESTER, JJ.

JOHNSON J.:

¶ 1 This case presents an issue of first impression in our Commonwealth: whether it is proper for a magistrate to issue an anticipatory search warrant pursuant to a finding of probable cause that is based primarily upon the anticipated occurrence of future events enumerated in the affidavit of probable cause. We hold that a magistrate's finding of probable cause to issue an anticipatory search warrant may be based only on circumstances presently known to the police and not on the occur-

rence of triggering events enumerated in the affidavit. Therefore, we reverse the suppression court's order that denied Gary Coleman's motion to suppress evidence seized pursuant to an anticipatory search warrant because the affidavit of probable cause was based upon future cause to be established by future criminal activity, the occurrence of which was speculative.

¶ 2 This action arises from Coleman's conviction of four counts in violation of the Controlled Substance, Drug, Device and Cosmetic Act. 35 P.S. § 780–113(a)(16), (30)–(32). Following a jury trial, Coleman was sentenced to no less than four years and no more than eight years' imprisonment. Coleman appeals the judgment of sentence and raises the following questions for our review:

I. DOES THE AFFIDAVIT OF PROBABLE CAUSE MEET THE REQUIREMENTS NECESSARY FOR THE ISSUANCE OF AN ANTICIPATORY SEARCH WARRANT?

A. IS THERE SUFFICIENT PROBABLE CAUSE?

B. WAS THE WARRANT PREMATURELY EXECUTED?

Appellant's Brief and Appendix at 4. Because we answer the first two questions in the negative and make our decision on those grounds, we will not address the third question.

¶ 3 "[T]he traditional standard of review of a magistrate's probable cause determination is whether a substantial basis existed for concluding that a search would uncover evidence of wrongdoing." *Commonwealth v. DiGiovanni*, 428 Pa.Super. 81, 630 A.2d 42, 45 (1993). "Our scope of review of a suppression court's ruling is confined primarily to questions of law." *Commonwealth v. Sharp*, 453 Pa.Super. 349, 683 A.2d 1219, 1221 (1996).

¶ 4 In *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985), our Supreme Court adopted a "totality of the circumstances" standard for evaluating whether probable cause exists for the issuance of a search warrant based upon information received from a confidential informant. In *Gray*, the court stated:

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing] that probable cause existed.'"

*Gray*, 509 Pa. at 484, 503 A.2d at 925 (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960))). Where the warrant is an anticipatory warrant, the magistrate must conclude "that there is a fair probability that evidence of current or past criminal activity will be on the premises to be searched at the time the warrant is executed." *Commonwealth v. Reviera*, 387 Pa.Super. 196, 563 A.2d 1252, 1255 (1989). "This determination must be based on facts described within the four corners of the supporting affidavit." *Commonwealth v. Stamps*, 493 Pa. 530, 535–36, 427 A.2d 141, 143 (1981).

¶ 5 We will review the affidavit of probable cause on the basis of these standards. On February 27, 1995, Detective James Comunale and Sergeant William Black swore out an affidavit that states, in pertinent part, the following:

(1) "On or about the middle part of February" Sergeant Black supervised a transaction involving a "reliable confidential informant," an "unwitting informant" and "a person in the residence at the corner of Dix Drive and Tillman Drive;"

(2) during the transaction the "unwitting informant" obtained cocaine from the "person in the residence;"

(3) Coleman resided at this residence;

(4) there were "numerous tips concerning a lot of traffic at the residence, especially in the late night/early morning hours" and the traffic was described as "a vehicle coming to the residence, the operator and/or passenger of said vehicle going into 300 Dix Drive and returning a short time later to said vehicle and leaving the area;"

(5) Detective Comunale had cited Coleman for a traffic violation in the "late 1980's" during which Detective Comunale "smelled the odor of burned marijuana;"

(6) the confidential informant was reliable because he had given information to two police departments that had resulted in the arrests of other drug offenders; and

(7) the confidential informant "will arrange the same scenario as the first transaction" for March 1, 1995.

Affidavit of Probable Cause, 2/27/95. The affidavit requested an "anticipatory search warrant" for Coleman's residence at 300 Dix Drive to "recover official funds" that were to be given to the confidential informant and used to purchase cocaine on March 1, 1995. Based on the foregoing, the magistrate issued the search warrant. On March 1, 1995, the police supervised a transaction during which the confidential informant entered 300 Dix Drive with $100.00, given to him by the police, and returned with a gram of cocaine. Immediately thereafter, the police executed the warrant and seized contraband, cash and firearms from Coleman's residence.

■ ¶ 6 This Court has had only three occasions to address anticipatory search warrants. *See Commonwealth v. Glass*, 718 A.2d 804 (Pa.Super.1998); *Commonwealth v. DiGiovanni*, 428 Pa.Super. 81, 630 A.2d 42 (1993); *Commonwealth v. Reviera*, 387 Pa.Super. 196, 563 A.2d 1252

(1989). This appeal presents a question not specifically addressed in any of these cases. The question is whether a magistrate may properly issue an anticipatory search warrant when the probable cause affidavit contains insufficient information regarding past or present criminal activity and instead sets forth specific future events, the occurrence of which would establish a fair probability that evidence of criminal activity would be located on the premises. Concisely stated, the question is whether probable cause must exist at the time the warrant issues, or whether it need only exist at some future time after the occurrence of events specified in the affidavit. Based on our analysis of the foregoing cases and cases from other jurisdictions, we conclude that probable cause must exist at the time the warrant is issued, and probable cause must be based on facts that have transpired prior to the issuance of the warrant.

■ ¶ 7 This Court has defined an anticipatory search warrant as a " 'warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.' " *Glass*, 718 A.2d at 806 (quoting *Reviera*, 563 A.2d at 1254 (quoting 1 W.R. LaFave, Search and Seizure § 3.7(c), at 94 (2d ed.1987))); *DiGiovanni*, 630 A.2d at 45 n. 2. However, the fact that an anticipatory search warrant may be issued for evidence not yet on the premises to be searched does not alter the fact "probable cause must exist at the time the warrant issues." *Glass*, 718 A.2d at 812.

■ ¶ 8 The difference between an ordinary search warrant and an anticipatory search warrant is that an anticipatory search warrant is based on probable cause that evidence of criminal activity will be on the premises at some *future time*. *See id.* at 806. Thus, unlike a regular search warrant where the focus of magistrate's probable cause determination is on the probability of whether evidence sought is

currently located on the premises, a magistrate's determination when issuing an anticipatory search warrant must focus on the probability that the evidence sought will be on the premises at the time the warrant is executed. A magistrate may make such a determination based only upon facts that have transpired prior to the issuance of the warrant and are enumerated within the affidavit. *See id.* Therefore, the magistrate may not consider the occurrence of the future triggering events mentioned in the affidavit when making a determination of probable cause. Rather, these triggering events are meant solely to be a means "of judicial control over the circumstances under which a search will be completed." *Reviera,* 563 A.2d at 1256.

¶ 9 In *Reviera,* the police received a tip from a reliable informant that a man named Jose was storing and selling controlled substances out of a house. An undercover officer went to the house that same day and attempted to purchase an ounce of cocaine from Jose. Jose told the undercover officer that he was waiting for delivery of cocaine that would arrive at 10 P.M. and directed the officer to return after 10 P.M. During this conversation, several other people approached Jose to purchase cocaine and were turned away with the same instructions to return after 10 P.M. Based upon this information, the officer swore out an affidavit of probable cause and requested a search warrant for Jose's house. The warrant was approved and issued at 9:50 P.M. The police executed the warrant at 10:20 P.M. and seized physical evidence that the defendant later moved to suppress. The trial court granted the defendant's motion, and the Commonwealth appealed to this Court.

¶ 10 We held that "a magistrate has authority to issue a search warrant where she reasonably concludes that there is a fair probability that evidence of current or past criminal activity will be on the premises to be searched at the time the warrant is executed." *Id.* at 1255. We stated that

a "statement by one who intends to participate in the crime that is the object of the search warrant ordinarily provides a sufficiently reliable basis for concluding that criminal activity will take place where and when he says it will." *Id.* at 1256. Accordingly, we reversed the suppression court's decision to suppress the evidence because the magistrate's finding of probable cause was supported by Jose's statement to the officer earlier that day that cocaine was en route to the house and would be there at 10 P.M.

¶ 11 In *DiGiovanni,* the second case in which this Court addressed anticipatory search warrants, the Tucson, Arizona Police received information from Pak Mail of America, a package delivery company, that they had discovered a package containing fifteen (15) pounds of marijuana with a Philadelphia address that was to be shipped via UPS. 630 A.2d at 42. The Tucson Police then agreed with the Philadelphia Police that the package would be rerouted to the Philadelphia Police so that they could perform a controlled delivery. Upon receiving the package in Philadelphia, the Philadelphia Police secured a UPS uniform and truck and then proceeded to plan a controlled delivery to the address on the package. Based on this information, the Philadelphia Police then obtained an anticipatory search warrant. The package was delivered, and five minutes later, the police executed the warrant and found the defendant in the room with the open package.

¶ 12 The defendant sought to suppress the package based on his assertion that the affidavit of probable cause was insufficient to support the magistrate's finding of probable cause and the issuance of the warrant. *See id.* at 44. The defendant argued that *Reviera* requires that "the police must suspect particular defendants of ongoing criminal activity before issuing a warrant." *Id.* at 46. Therefore, the defendant argued, the affidavit was insufficient because it did not indicate that the police had any "knowledge or concrete sus-

picion that the person(s) receiving the package containing marijuana were engaged in criminal activity." *Id.* at 44. We rejected this argument on the following rationale:

[w]here magistrates are presented with reliable evidence that contraband will arrive at a specific location within a short period of time, they may conclude that a crime is in the process of being committed, and may issue the warrant despite the fact that the contraband has not arrived at its ultimate destination.

*Id.* (quoting *Reviera*, 563 A.2d at 1255). Furthermore, in *Reviera*, we had also stated that "the police are [not] obliged to wait until a criminal scheme is brought to fruition before requesting a warrant." 563 A.2d at 1255.

¶ 13 Both *Reviera* and *DiGiovanni* show that the proper focus of a probable cause determination, in the context of the issuance of an anticipatory search warrant, is on whether the evidence sought will be on the premises at the time the warrant is executed based only upon circumstances that have transpired prior to the issuance of the warrant. In *Reviera*, the determinative factor was the statement by Jose to the officer that cocaine would arrive at the house later that same day. Based on this information, the magistrate had a substantial basis for determining that evidence of criminal activity would be located on the premises when the warrant was executed later that evening. *See id.* at 1257. In *DiGiovanni*, the police had intercepted a package of marijuana that was being mailed to an identified location. Therefore, we concluded that the magistrate had a "reasonable basis to conclude that there was a fair probability that evidence of crime or contraband would arrive on the premises." *DiGiovanni*, 630 A.2d at 42 (footnote omitted).

¶ 14 In *Glass*, the last case in which this Court discussed anticipatory search warrants, we did not address whether the affidavit of probable cause was sufficient because the defendant's only challenge to the warrant was that anticipatory search warrants violated Article I, § 8 of the Pennsylvania Constitution. 718 A.2d at 807. Significantly though, in *Glass* we upheld an anticipatory search warrant that was issued for premises involved in a reverse sting operation orchestrated by the police. The defendant, Michael Glass, was the target of the operation. His name was located in a ledger found at the premises of an individual named Osborne who told the police that he had been supplying Glass with marijuana for over four months. In the ledger, next to Glass's name, was the number "6125." Osborne told the police that Glass owed him this amount for four pounds of marijuana. Glass had called Osborne and told him that Glass was ready to pay the amount owed. Supervised by the police, Osborne went to Glass's residence and received payment. While there, Glass solicited Osborne to sell Glass more marijuana. As a result, the police supplied Osborne with twelve (12) to fourteen (14) pounds of marijuana to sell to Glass. Based on this information, the police obtained an anticipatory search warrant for Glass's residence—the planned location for the drug deal. Shortly after the deal was complete, the police executed the warrant and seized the marijuana along with seventy (70) firearms and seventy-two (72) knives.

¶ 15 Glass sought to suppress this evidence based on his assertion that probable cause did not exist at the time the warrant was issued. *See id.* at 812. The suppression court denied Glass's motion. On appeal, we affirmed though we agreed with Glass that probable cause must exist at the time the warrant is issued. *See id.* Though the question of the sufficiency of the affidavit was not before us, we nevertheless stated: "when a government official presents *independent evidence* indicating that delivery of contraband will, or is likely to, occur, and when the magistrate conditions the warrant on that delivery, there is sufficient probable cause to uphold the warrant." *Id.* (quoting *United States*

*v. Garcia*, 882 F.2d 699, 702 (2d Cir.1989)) (emphasis added). The foregoing statement clearly indicates that the affidavit of probable cause must contain "independent evidence," besides the anticipated future delivery, upon which the magistrate may base a finding of probable cause.

¶ 16 With these precedents in mind, we now review the magistrate's probable cause determination considering only those events that purportedly occurred prior to the issuance of the warrant and were presented in the affidavit of probable cause. The crux of this analysis is whether the magistrate, at the time the warrant was issued, had a substantial basis for concluding that the transaction outlined in the warrant would occur at Coleman's residence. The affidavit states that "[o]n or about the middle part of February" an unwitting informant purchased one hundred dollars ($100) worth of cocaine from Coleman's residence. Affidavit of Probable Cause, 2/27/95. The affidavit stated that on March 1st, the confidential informant "will arrange the same scenario." *Id.* Because the affidavit was not exact as to the date of the February transaction, the magistrate could have assumed that it occurred anytime from ten to twenty days prior to the March 1st transaction and the execution of the warrant. The affidavit states that the confidential informant was reliable because he had given information to two police departments that had resulted in the arrests of other drug offenders. *See id.* Furthermore, the affidavit stated that there was "a lot of traffic" at the residence in the "late night/early morning hours." We conclude that the foregoing factors did not give the magistrate a substantial basis for concluding that the March 1st transaction would transpire.

¶ 17 The only instance connecting drugs to Coleman's residence was the isolated occurrence anytime from ten to twenty days prior to the issuance of the warrant. On that occasion, there was no account of how much cocaine remained in the residence. Furthermore, the amount purchased was not so large as to indicate that there was an ongoing drug-selling operation at the residence. Most importantly, there was no information in the days immediately preceding the issuance of the warrant that would indicate that the March 1st transaction would ever occur. The affidavit states that the transaction would be set up on March 1st. In *Reviera*, the police were informed that day that cocaine was arriving at the home that same evening. In *DiGiovanni*, the police had intercepted a package of marijuana en route to the house. In *Glass*, the defendant had solicited a police informant to sell the defendant marijuana. In all of these cases there was a substantial basis for the magistrate to conclude that the anticipated event would occur. In the instant case though, it was equally plausible for the magistrate to conclude that the unwitting informant would attempt to purchase cocaine on March 1st and would be turned away from Coleman's residence for any number of reasons. In this regard, the affidavit simply stated that the "same scenario" "will" be arranged on March 1st. However, "a warrant cannot properly be issued based upon mere speculation that a crime might occur at some future time." *Reviera*, 563 A.2d at 1255.

¶ 18 We hold that a magistrate must not consider whether probable cause will exist if the anticipated events transpire, but rather must focus on whether there is probable cause to believe that the anticipated events will transpire. In this regard, we echo the proscription of our Supreme Court that "[a] search warrant is no general arm for ferreting out crime, but a special proceeding, based upon present cause." *Id.* (quoting *Commonwealth v. Shaw*, 444 Pa. 110, 114, 281 A.2d 897, 899 (1971)). In *Reviera* we cited *State v. Gutman*, 670 P.2d 1166 (Alaska Ct.App.1983), where the Alaska Court of Appeals stated the following regarding present cause and future anticipated events:

Perhaps the single most important aspect ... is the implicit requirement that

probable cause to believe evidence of a crime will exist at a certain location in the future must be established *when the warrant is issued.* Once a judge or magistrate is presented with evidence meeting this implicit requirement, he may issue an anticipatory warrant if the warrant sets forth specific, *objective criteria* that are *sufficient to assure that officers will not execute the warrant prematurely,* that is, before the evidence is in place. As stated by the Alaska Supreme Court in *Johnson v. State,* 617 P.2d at 1124 n. 11:

> ... there must be probable cause to believe that the items to be seized will be at the place to be searched at the time the warrant is executed, or in other words, that the warrant will not be prematurely executed.[4]

FN4. See also 1 W.R. LaFave, supra, § 3.7(c) at 701–02:

> *It is important, therefore, that the affidavit for an anticipatory warrant indicate how it is known that the items to be seized will on a later occasion be at the place specified.* [footnote omitted].

By contrast, when an anticipatory warrant is issued on the mere speculation that evidence of a crime might be found at a given location at some future time, the warrant will lack probable cause and will therefore be invalid *regardless of the extent to which express provisions of the warrant assure that a search will not be commenced until probable cause actually exists.*

670 P.2d at 1172 (emphasis added). Therefore, we conclude that the warrant in the instant case lacked probable cause because the affidavit provided facts sufficient only for speculation by the magistrate, and thus, the magistrate did not have the requisite substantial basis for a finding of probable cause.

¶ 19 Judgment of sentence **REVERSED.**