**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Gary COLEMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 30, 1999.
Decided Feb. 7, 2001.

Vincent C. Murovich, Jr., Pittsburgh, for appellant.

Robert A. Willig, Asst. Dist. Atty., Pittsburgh, for Commonwealth, appellee.

Before JOHNSON, MUSMANNO and HESTER, JJ.

JOHNSON, J.:

¶ 1 This case is before us on remand from the Pennsylvania Supreme Court. Pursuant to the Supreme Court's order, *see Commonwealth v. Coleman,* 760 A.2d 848 (Pa.2000), we now consider this case in light of the Court's recent decision in *Commonwealth v. Glass,* 562 Pa. 187, 754 A.2d 655 (2000).

¶ 2 In *Glass,* the Supreme Court addressed the question of "whether Article I, Section 8, of the Pennsylvania Constitution categorically proscribes the issuance of what is commonly referred to as an 'anticipatory search warrant,' i.e., 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.' " *Glass,* 754 A.2d at 656 (quoting *Commonwealth v. Glass,* 718 A.2d 804, 806 (Pa.Super.1998)). The Court held that an anticipatory search warrant is not per se violative of Article I, Section 8. *See id.* In so holding, the Court stated that a magistrate considering

whether there is probable cause for the issuance of an anticipatory search warrant may rely on information in an affidavit concerning future events "[s]o long as [the] factual averments [are] reliable and probative of the likelihood that evidence will be found where and when the warrant is to be executed...." *Id.* at 664.

¶ 3 In the instant case, Gary Coleman does not challenge the per se constitutionality of the anticipatory search warrant issued for his home. Rather, he claims that there was no probable cause for the issuance of the warrant. Thus, our prior disposition focused on the sufficiency of the affidavit of probable cause, and we held that "a magistrate's finding of probable cause to issue an anticipatory search warrant may be based only on circumstances presently known to the police and not on the occurrence of triggering events enumerated in the affidavit." *Commonwealth v. Coleman*, 743 A.2d 983, 984–86 (Pa.Super.1999). Consequently, we reversed "the suppression court's order that denied Gary Coleman's motion to suppress evidence seized pursuant to an anticipatory search warrant because the affidavit of probable cause was based upon future cause to be established by future criminal activity, the occurrence of which was speculative." *Id.* at 985.

¶ 4 In accordance with *Glass,* we now hold that the issuance of an anticipatory search warrant must be based on a finding of probable cause at the time the warrant is authorized, and may be established by information regarding future events, so long as there is a fair probability that the future events will transpire. *See Glass,* 754 A.2d at 663 (stating that "probable cause must exist at the time the warrant is authorized[,]" and a magistrate may consider likely future events subject to the "strictures attending all probable cause evaluations").

¶ 5 Our standard of review from a suppression court's ruling involving a magistrate's finding of probable cause is well settled.

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing] that probable cause existed.' "

*Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921, 925 (1985) (quoting *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). A magistrate's finding of probable cause "must be based on facts described within the four corners of the affidavit[,]" *Commonwealth v. Stamps,* 493 Pa. 530, 427 A.2d 141, 143 (1981), and "[o]ur scope of review of a suppression court's ruling [on a magistrate's finding of probable cause] is confined primarily to questions of law." *Commonwealth . v. Sharp,* 453 Pa.Super. 349, 683 A.2d 1219, 1221 (1996).

¶ 6 Guided by these standards, we shall now review the facts of this case, and those arguments advanced in the parties' briefs on remand. In our prior disposition, we set forth the facts as follows:

On February 27, 1995, Detective James Comunale and Sergeant William Black swore out an affidavit [of probable cause] that ..., in pertinent part, [sets forth] the following [averments]:

(1) "On or about the middle part of February" Sergeant Black supervised a transaction involving a "re-

liable confidential informant," an "unwitting informant" and "a person in the residence at the corner of Dix Drive and Tillman Drive;"

(2) during the transaction the "unwitting informant" obtained cocaine from the "person in the residence;"

(3) Coleman resided at this residence;

(4) there were "numerous tips concerning a lot of traffic at the residence, especially in the late night/early morning hours" and the traffic was described as "a vehicle coming to the residence, the operator and/or passenger of said vehicle going into 300 Dix Drive and returning a short time later to said vehicle and leaving the area;"

(5) Detective Comunale had cited Coleman for a traffic violation in the "late 1980's" during which Detective Comunale "smelled the odor of burned marijuana;"

(6) the confidential informant was reliable because he had given information to two police departments that had resulted in the arrests of other drug offenders; and

(7) the confidential informant "will arrange the same scenario as the first transaction" for March 1, 1995.

Affidavit of Probable Cause, 2/27/95. The affidavit requested an "anticipatory search warrant" for Coleman's residence at 300 Dix Drive to "recover official funds" that were to be given to the confidential informant and used to purchase cocaine on March 1, 1995. Based on the foregoing, the magistrate issued the search warrant. On March 1, 1995, the police supervised a transaction during which the confidential informant entered 300 Dix Drive with $100.00, given to him by the police, and returned with a gram of cocaine. Immediately thereafter, the police executed the warrant and seized contraband, cash and firearms from Coleman's residence.

*Commonwealth v. Coleman,* 743 A.2d at 985–86.

¶ 7 Our task in this appeal is to determine whether the foregoing averments in the affidavit of probable cause are sufficiently "reliable and probative" to withstand the "sorts of specificity and reliability strictures attending all probable cause evaluations[,]" thereby establishing a substantial basis for the magistrate to determine that there was a fair probability that the anticipated drug transaction would transpire. *Glass,* 754 A.2d at 664. In our prior consideration of this case, we reviewed two other cases involving the sufficiency of an affidavit of probable cause for an anticipatory search warrant. *See Commonwealth v. DiGiovanni,* 428 Pa.Super. 81, 630 A.2d 42 (1993); *Commonwealth v. Reviera,* 387 Pa.Super. 196, 563 A.2d 1252 (1989). We stated:

> In *Reviera,* the police received a tip from a reliable informant that a man named Jose was storing and selling controlled substances out of a house. An undercover officer went to the house that same day and attempted to purchase an ounce of cocaine from Jose. Jose told the undercover officer that he was waiting for delivery of cocaine that would arrive at 10 P.M. and directed the officer to return after 10 P.M. During this conversation, several other people approached Jose to purchase cocaine and were turned away with the same instructions to return after 10 P.M. Based upon this information, the officer swore out an affidavit of probable cause and requested a search warrant for Jose's house. The warrant was approved and issued at 9:50 P.M. The police executed the warrant at 10:20

P.M. and seized physical evidence that the defendant later moved to suppress. The trial court granted the defendant's motion, and the Commonwealth appealed to this Court.

We held that "a magistrate has authority to issue a search warrant where she reasonably concludes that there is a fair probability that evidence of current or past criminal activity will be on the premises to be searched at the time the warrant is executed." *Id.* at 1255.... Accordingly, we reversed the suppression court's decision to suppress the evidence because the magistrate's finding of probable cause was supported by Jose's statement to the officer earlier that day that cocaine was en route to the house and would be there at 10 P.M.

In *DiGiovanni*, the second case in which this Court addressed anticipatory search warrants, the Tucson, Arizona Police received information from Pak Mail of America, a package delivery company, that they had discovered a package containing fifteen (15) pounds of marijuana with a Philadelphia address that was to be shipped via UPS. 630 A.2d at 42. The Tucson Police then agreed with the Philadelphia Police that the package would be rerouted to [them] so that they could perform a controlled delivery. Upon receiving the package in Philadelphia, the Philadelphia Police secured a UPS uniform and truck and then proceeded to plan a controlled delivery to the address on the package. Based on this information, the Philadelphia Police then obtained an anticipatory search warrant. The package was delivered, and five minutes later, the police executed the warrant and found the defendant in the room with the open package.

The defendant sought to suppress the package based on his assertion that the affidavit of probable cause was insuffi-

cient to support the magistrate's finding of probable cause and the issuance of the warrant. *See id.* at 44. The defendant argued that *Reviera* requires that "the police must suspect particular defendants of ongoing criminal activity before issuing a warrant." *Id.* at 46. Therefore, the defendant argued, the affidavit was insufficient because it did not indicate that the police had any "knowledge or concrete suspicion that the person(s) receiving the package containing marijuana were engaged in criminal activity." *Id.* at 44. We rejected this argument on the following rationale:

> [w]here magistrates are presented with reliable evidence that contraband will arrive at a specific location within a short period of time, they may conclude that a crime is in the process of being committed, and may issue the warrant despite the fact that the contraband has not arrived at its ultimate destination.

*Id.* (quoting *Reviera*, 563 A.2d at 1255).

*Coleman*, 743 A.2d at 987–88.

¶ 8 In both *Reviera* and *DiGiovanni*, the affidavits of probable cause contained factual averments regarding future events that established a fair probability that the future events would in fact transpire. In *Reviera*, we reasoned that a "statement by one who intends to participate in the crime that is the object of the search warrant ordinarily provides a sufficiently reliable basis for concluding that criminal activity will take place where and when he says it will." *Reviera*, 563 A.2d at 1256. In *DiGiovanni*, we stated that "[w]hen a delivery of evidence is controlled by the government, as in the case *sub judice*, there is a greater probability than otherwise that the evidence, in fact, will be on the premises when the warrant is executed." *DiGiovanni*, 630 A.2d at 43. Furthermore,

in *Glass*, the affidavit of probable cause stated that the police had secured a large quantity of marijuana and had made arrangements to deliver the marijuana to the defendant that same day. *Glass*, 754 A.2d at 657. The probability of the anticipated transaction occurring was established by averments to the effect that on May 7th, two days prior to the request for the warrant, the police had supervised a transaction during which the defendant paid the confidential informant $6,500 for a previous sale of marijuana, and the defendant solicited the confidential informant to sell the defendant additional marijuana, which was to be delivered to the defendant's residence on May 9th. *See id.* at 656–57. In all of these cases, the affidavits contained sufficient information to establish a fair probability that the anticipated events would occur. Therefore, because the information regarding these likely future events satisfied the "specificity and reliability strictures attending all probable cause evaluations[,]" the magistrates properly considered these future events as a basis for a present finding of probable cause. *Id.* at 664.

 ¶ 9 Guided by these precedents, we now consider whether the averments in the affidavit in the instant case established a fair probability that the anticipated drug transaction at Coleman's residence would transpire. The affidavit avers that the police had supervised a drug transaction at Coleman's residence "in the middle part of February." As the affidavit was sworn out on February 27th, the previous transaction could have occurred anytime from ten to eighteen days prior to the request for the warrant. Moreover, the information the police received from supervising the prior transaction did not reveal the quantity of drugs at Coleman's residence at that time. Thus, while this information may be probative, this averment alone was not sufficient

to establish a fair probability that there would be drugs on the premises on March 1st, the day the warrant was to be executed. *See Glass*, 754 A.2d at 663 (stating that " 'as time passes and it becomes possible for facts and circumstances to change, a redetermination of probable cause is required' ") (quoting *Commonwealth v. Tolbert*, 492 Pa. 576, 424 A.2d 1342, 1344 (1981) (declining to consider stale information in its probable cause evaluation because the averment recounted an isolated drug transaction sometime in November of 1975 and the warrant was requested on December 2, 1975)). Furthermore, the information regarding the anticipated drug transaction on March 1st was wholly insufficient. As we stated in *Coleman:*

> Most importantly, there was no information in the days immediately preceding the issuance of the warrant that would indicate that the March 1st transaction would ever occur. The affidavit states that the transaction would be set up on March 1st. In *Reviera*, the police were informed that day that cocaine was arriving at the home that same evening. In *DiGiovanni*, the police had intercepted a package of marijuana en route to the house. In *Glass*, the defendant had solicited a police informant to sell the defendant marijuana. In all of these cases there was a substantial basis for the magistrate to conclude that the anticipated event would occur. In the instant case though, it was equally plausible for the magistrate to conclude that the unwitting informant would attempt to purchase cocaine on March 1st and would be turned away from Coleman's residence for any number of reasons. In this regard, the affidavit simply stated that the "same scenario" "will" be arranged on March 1st. However, "a warrant cannot properly be issued based upon mere speculation that a crime

might occur at some future time." *Reviera,* 563 A.2d at 1255.

*Coleman,* 743 A.2d at 989 (emphasis added). The circumstances of this case are clearly not what this Court contemplated when we stated that "the police are [not] obliged to wait until a criminal scheme is brought to fruition before requesting a warrant." *Reviera,* 563 A.2d at 1255. Nor is it similar to the circumstances in *Glass* where the Supreme Court stated that "[t]he necessary pieces were in motion and all but inevitably the pieces would fall into a set, at a later time, constituting a crime." *Glass,* 754 A.2d at 664 n. 12 (quoting 2 W.R. LaFave, Search and Seizure § 3.7(c), at 366 (3d ed.1996)). Rather, the police in this case were proceeding upon information regarding a previous isolated drug transaction and were speculating that they could orchestrate a second similar transaction that would give them probable cause to search Coleman's home. However, "[a] search warrant is no general arm for ferreting out crime, but a special proceeding, based upon present cause." *Reviera,* 563 A.2d at 1255 (quoting *Commonwealth v. Shaw,* 444 Pa. 110, 114, 281 A.2d 897, 899 (1971)). Thus, "when an anticipatory warrant is issued on the mere speculation that evidence of a crime might be found at a given location at some future time, the warrant will lack probable cause and will therefore be invalid *regardless of the extent to which express provisions of the warrant assure that a search will not be commenced until probable cause actually exists.*" *State v. Gutman,* 670 P.2d 1166, 1172 (Alaska Ct.App.1983) (emphasis added). In this case, the police failed to provide sufficient information to establish a fair probability that the March 1st transaction would occur. Thus, the magistrate issued the warrant on the mere speculation that the police would be successful in orchestrating the transaction, assured by the fact that the warrant would not be execut-ed until probable cause existed. Though ultimately the police succeeded in orchestrating the transaction, the warrant was nonetheless invalid when issued.

¶ 10 Of course, the police can always conjure up scenarios that would give rise to probable cause. Magistrates, however, may not issue warrants anytime they are presented with a speculative future scenario assured only by the contingency that the warrant will not be executed until probable cause exists. Rather, the affidavit must contain sufficient information to establish probable cause at the time the warrant is authorized. *See Glass,* 754 A.2d at 663. Therefore, a finding of probable cause based upon information regarding future events must at least establish a fair probability that the future events will in fact occur. Based on the foregoing, we conclude that the affidavit of probable cause did not establish that there was a fair probability the anticipated drug transaction would occur. Accordingly, the affidavit was insufficient to give the magistrate a substantial basis for concluding that probable cause existed.

¶ 11 In conclusion, we must note that the classification of the search warrant in this case as an anticipatory warrant is questionable under our Supreme Court's definition of an anticipatory search warrant. As stated above, an anticipatory search warrant is "a warrant based upon an affidavit showing probable cause that at some future time (**but not presently**) certain evidence of crime will be located at a specified place." *Glass,* 754 A.2d at 656 (emphasis added). As the foregoing facts reveal, the police in this case requested a warrant on the basis that drugs were being sold upon the premises to be searched. In the affidavit of probable cause, the police never alleged that drugs would be delivered to the premises in the future.

Thus, at the time the police requested the warrant, they were proceeding on the theory that there were presently drugs at Coleman's home. But if the evidence of crime for which the police were searching was presently on the premises at the time they requested the warrant, then their request for an anticipatory search warrant may have been improper. Ostensibly, the police tried to circumvent this obstacle by requesting a warrant for the money that was to be used in purchasing the drugs. Of course, the money was not yet on the premises at the time the police requested the warrant because it was still within their possession. However, the money was not contraband or evidence of a current or past crime at the time they requested the warrant. Rather, the money was only potential evidence of a possible future crime. We do not reach a conclusion as to the propriety of a request for an anticipatory search warrant in such circumstances, as neither party has raised this issue in their briefs to this Court, nor was it a factor in the suppression court's ruling. We make the foregoing statement only to clarify that our decision here, which focuses on the sufficiency of the affidavit of probable cause, does not in any way sanction the use of anticipatory search warrants in cases where the evidence sought is presently on the premises. In such cases, it would seem that the proper procedure would be for the police to request an ordinary search warrant.

¶ 12 Judgment of sentence **RE-VERSED.**